HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| KERRY T. TUCKER, a single person,<br><br>Plaintiff,<br><br>v.<br><br>THE CITY OF LAKEWOOD, et al.,<br><br>Defendants. | CASE NO. 2:15-cv-05355<br><br>ORDER<br><br>Dkt. #s 12 & 18 |

THIS MATTER is before the Court on Defendants' Motion for Summary Judgment [Dkt. # 12]. Defendants seek an order dismissing Plaintiff's 42 U.S.C. § 1983 excessive force claims and state law negligence claims.

**I.   INTRODUCTION**

On June 27, 2012, City of Lakewood Police responded to a domestic dispute call involving a verbal altercation between a male and a female. The reporting female told responding officers that the male suspect fled to a wooded area often used as a homeless camp. Plaintiff Tucker, otherwise unconnected to the dispute or the fleeing suspect, was staying in the camp at the time of the incident.

Police believed the fleeing suspect had an outstanding felony warrant, prompting them to search the woods for him. Lakewood K-9 Officer James Syler deployed his police dog, Astor, to aid in the search for the suspect. At the time of the K-9 search, Tucker was returning to his tent in the camp along a walking trail. Tucker concedes he heard Syler say, "Canine. Get off the trail." But he claims he was off the trial, standing beside a tree, when Astor contacted and then Astor bit his lower leg. The bite caused him significant pain and injuries. Tucker was not a suspect and was never arrested or charged in connection with incident.

Tucker brought § 1983 excessive force *Monell* and state-law negligence claims against the City of Lakewood for failure to properly train and supervise its K-9 unit. [Dkt. #1]. He sued Syler for violating his constitutional right against excessive force. He asserts § 1983 and state-law negligence claims against Syler.

The city and Syler seek summary judgment, arguing Tucker is unable to show the city's deliberate indifference to the conditions leading to his alleged civil rights violations or, that any indifference was the proximate cause of his injuries. They dispute that Syler violated Tucker's rights, but that even if he did he is entitled to qualified immunity because Tucker's rights were not clearly established at the time. They further contend that Tucker's negligence claims are barred by the public duty doctrine.

Tucker argues that the city's deliberate indifferent is amply demonstrated by a series of prior excessive force claims against Syler and Astor. He argues Syler is not entitled to qualified immunity because deploying a canine with a known propensity for unauthorized biting into an area known to be populated by people, other than the suspect, was patently unreasonable.

## II.     DISCUSSION

**A.     Summary Judgment Standard**

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact which would preclude summary judgment as a matter of law. Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to present, by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In other words, "summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable [fact finder] could return a [decision] in its favor." *Triton Energy*, 68 F.3d at 1220.

**B.     *Monell* Liability**

To set forth a claim against a municipality under § 1983, a plaintiff must show that the defendant's employees or agents acted pursuant to an official custom, pattern, or policy that violates the plaintiff's civil rights, or that the entity ratified the unlawful conduct. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690–91, 98 S. Ct. 2018 (1978); *see also Larez v. City of Los Angeles*, 946 F.2d 630, 646–47 (9th Cir. 1991). A municipality may be liable for a "policy of inaction" where "such inaction amounts to a failure to protect constitutional rights." *Lee v. City of Los Angeles*, 250 F.3d 668, 682 (9th Cir. 2000) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). Municipal liability for inaction attaches only where the policy

amounts to "deliberate indifference." *Id.* The custom or policy of inaction, however, "must be the result of a conscious or deliberate choice to follow a course of action made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Id.* (citations and internal punctuation omitted). Thus, to impose liability on a local government entity for failing to act to preserve constitutional rights, a § 1983 plaintiff must allege that: (1) a municipality or its employee deprived plaintiff of a constitutional right; (2) the municipality has customs or policies that amount to deliberate indifference; and (3) those customs or policies were the "moving force" behind the constitutional right violation. *Id.* at 681–82.

A municipality is not liable simply because it employs a tortfeasor. *See Monell*, 436 U.S. at 691. A municipality may not be held liable for the torts of its employees unless they were acting pursuant to an official policy or longstanding custom or practice. *See Botello v. Gammich*, 413 F.3d 971, 978–79 (9th Cir. 2005) (citing *Monell*, 436 U.S. at 691; *Bd. of Cty. Cmm'rs v. Brown*, 520 U.S. 397, 403, 117 S. Ct. 1382 (1997); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479, 106 S. Ct. 1292 (1986); and *Webb v. Sloan*, 330 F.3d 1158, 1164 (9th Cir. 2003)).

Tucker claims Lakewood's K-9 policies caused the constitutional deprivation: 1) The city's practice of deploying a K-9 where bystanders could be exposed to dog bites; 2) The use of the "bite and hold" technique; 3)The city's review procedures following K-9 use of force, particularly in light of previous excessive force incidents involving Astor.

Lakewood argues that neither the policy allowing the deployment of a police dog to track a fleeing suspect in a wooded area nor the bite and hold technique proximately caused Tucker's injuries. Instead, it claims, Tucker's own failure to (properly) respond to Officer Syler's verbal warnings about the approaching K-9 proximately caused his injuries.

A warning prior to the use of force by a suspect is a factor to be considered when evaluating the reasonableness of a use of force, but even where the claimant was actually the suspect, a warning does not automatically absolve law enforcement of an excessive force claim. *Nelson v. City of Davis*, 685 F.3d 867, 882 (9th Cir. 2012). Even for a suspect, passive non-compliance that is not "particularly bellicose" does not justify a K-9 attack. *See Headwaters Forest Def. v. Cty. of Humboldt*, 276 F.3d 1125, 1130 (9th Cir. 2002), as amended (Jan. 30, 2002) (holding use of pepper spray against passive non-compliants was unreasonable use of force); *Smith v. City of Hemet*, 394 F.3d 689, 703 (9th Cir. 2005)(en banc)(noting that use of a police dog is "the most severe force authorized short of deadly force"). An isolated passive act by a *non*-suspect does not rise to the level of active resistance required to justify the use of force. *See Nelson v. City of Davis*, 685 F.3d at 882.

Viewed in the light most favorable to Tucker, Syler's verbal warnings did not render the use of force against him reasonable as a matter of law. Tucker concedes he heard warnings to the effect of "K-9! Get off the trail" just before Astor bit him. He claims he complied—he *was* "off the trail" when Astor attacked him. Tucker was an innocent bystander and not a suspect in the search. He was not actively fleeing or resisting arrest when the attack occurred. Tucker was subjected to a severe use of force while passively complying with Syler's warnings despite not being a suspect in the crime. The fact that a verbal warning was given does not nullify Syler's otherwise unreasonable conduct.

Lakewood further contends that Tucker is unable to demonstrate Lakewood's K-9 training and review policies amount to deliberate indifference required to support a failure to supervise claim. A reasonable fact finder could determine that Lakewood's established K-9 procedures or customs caused Tucker's constitutional violations. Astor had previously been

accused of misapplying the bite and hold technique on at least four other occasions.[1] A jury could find the city's decision not to alter their procedures after the previous incidents could be found to be deliberate indifference to the risk that an innocent bystander like Tucker would be exposed to excessive force. Lakewood contends that none of Astor's previous inflictions of slashing and bite injuries were found to be a constitutional violation. However, a jury could determine that those incidents, even if not amounting to a constitutional violation, notified the city of the potential of such a violation and need for corrective training or new policies.

Furthermore, a jury could find the Lakewood's K-9 bite review policy is sufficiently flawed to rise to the level of deliberate indifference of the potential suspects' constitutional rights. Defendants argue that Lakewood tracks and evaluates each dog bite to determine if remedial or disciplinary action is required. However, it is not clear that such reports give any insight into whether K-9 officers are acting beyond constitutional limits. A jury could find Lakewood's review policy—which has never resulted in a determination that Astor's conduct was deficient—is deliberate indifference to the constitutional rights of the citizens he has attacked. *See Chew v. Gates*, 27 F.3d 1432, 1441 (9th Cir. 1994) (a jury could find that a plaintiff's dog bite injury was caused by the city's failure to provide appropriate oversight of its K-9 program).

Viewed in the light most favorable to Tucker, a jury could find that the city's failure to remove Astor from active duty or institute training program to prevent innocent bystanders from

---

[1] See *Julian Curry v. Tacoma Police Dept.* et al. (3:10-cv-05034); *Richard Conley v. City of Lakewood* et al. (3:11-cv-06064); *Noel Saldana v. City of Lakewood* et al. (3:11-cv-06066); *Charles Boyles v. City of Lakewood* et al. (3:13-cv-05345).

becoming the victims of unwarranted dog attacks caused Tucker's injuries.  The defendants' motion for summary judgment on Tucker's *Monell* claim is DENIED[2].

## C. Qualified Immunity

Under the qualified immunity doctrine, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The purpose of the doctrine is to "protect officers from the sometimes 'hazy border' between excessive and acceptable force." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (quoting *Saucier v. Katz*, 533 U.S. 194, 206 (2001)). A two-part test resolves claims of qualified immunity by determining whether plaintiffs have alleged facts that "make out a violation of a constitutional right," and if so, whether the "right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Pearson v. Callahan*, 553 U.S. 223, 232 (2009).

Qualified immunity protects officials "who act in ways they reasonably believe to be lawful." *Garcia v. County of Merced*, 639 F.3d 1206, 1208 (9th Cir. 2011) (quoting *Anderson*, 483 U.S. at 631). The reasonableness inquiry is objective, evaluating 'whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.'" *Huff v. City of Burbank*, 632 F.3d 539, 549 (9th Cir. 2011) (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989)). Even if the officer's decision is constitutionally deficient, qualified immunity shields him from suit if his misapprehension about the law applicable to the circumstances was reasonable. *See Brosseau v.*

---

[2] Tucker's other *Monell* theories all arise from the same facts. All of his *Monell* claims can be fully developed at trial.

1  *Haugen*, 543 U.S. 194, 198 (2004). Qualified immunity "gives ample room for mistaken
2  judgments" and protects "all but the plainly incompetent." *Hunter v. Bryant*, 502 U.S. 224
3  (1991).

4      Syler argues that he is entitled to qualified immunity even if he violated Tucker's Fourth
5  Amendment rights, because they were not clearly established at the time of the incident. "The
6  relevant, dispositive inquiry in determining whether a right is clearly established is whether it
7  would be clear to a reasonable officer that his conduct was unlawful in the situation he
8  confronted." *Saucier v. Katz*, 533 U.S. at 202. The *Graham* test measures the reasonableness of
9  an officer's actions by balancing the severity of the crime against the threat posed to the public
10 or officers by the suspect and whether the suspect is actively attempting to flee. *Graham v.*
11 *Connor*, 490 U.S. 386, 396 (1989).

12     Tucker argues it was unreasonable to deploy Astor to a wooded area actively used as a
13 homeless camp, based on a suspicion that a non-violent suspect with a felony warrant had fled
14 into that area. Tucker also claims it was unreasonable for Syler to allow Astor to bite him
15 because he was not a suspect, he was not fleeing from police, he was not resisting arrest, he was
16 off the trail, and he had no obligation to proactively avoid being bit by a police dog.

17     Viewed in the light most favorable to Tucker, the evidence supports the conclusion that
18 Tucker's rights were clearly established at the time of the incident. Syler deployed a K-9 into a
19 wooded, park-like area where people were camping over night. He took this risk to pursue a non-
20 violent suspect who was presumed, but not seen, to have fled into the woods. Tucker claims he
21 was standing off the trail next to a tree when he heard a command to get off the trail and was bit
22 by Astor. Tucker was not a suspect or target of the search. Applying the *Graham* test, any
23 reasonable officer should have known this use of force was excessive. Syler is not entitled to
24

qualified immunity as a matter of law. His motion for summary judgment on this issue is DENIED.

**D.      Negligence and the Public Duty Doctrine**

Tucker also asserts a common law negligence claim. Syler argues that that claim is barred by the public duty doctrine.

An actionable negligence claim requires a plaintiff to demonstrate a duty owed to him, a breach of that duty, and a resulting injury caused by the breach. *Keller v. City of Spokane*, 146 Wn.2d 837, 44 P.3d 845 (2002). The public duty doctrine requires a negligence claim against a public official or municipality to demonstrate the existence of a duty owed to the injured individual, separate and exclusive from the official's or municipality's duty to the general public. *Taylor v. Stevens County*, 111 Wn.2d 159, 163, 758 P.2d 447 (1988). Two circumstances can establish a special relationship between a governmental entity and an individual, such that the governmental entity owed the individual a particularized duty. *See Caulfield v. Kitsap Cty.*, 108 Wn. App. 242, 250, 29 P.3d 738 (2001).

Such a relationship exists when (1) the government agency and an individual have direct contact or privity that sets the latter apart from the general public, (2) the entity or an official gives express assurances to the individual, and (3) the individual justifiably relies on those assurances. *Id*. The State may also be liable when a state actor affirmatively creates a danger or increases a plaintiff's vulnerability a danger. *Currier v. Doran*, 242 F.3d 905, 923, (10th Cir. 2001). This state-created danger exception requires a showing that the State's actions were beyond negligence to a level of "conscience shocking." *Id.*

Tucker's response does not address the public duty doctrine, or its "exceptions." Instead, he seeks to amend his complaint to include a strict liability claim under RCW 16.08.040

(Washington's "dog bite statute") [Dkt. #18]. Tucker's motion to amend his complaint is DENIED because RCW 16.08.040(2) explicitly exempts police dogs from strict liability.

The Court cannot construe Tucker's failure to respond to a claim made in a summary judgment motion as concession that the claim has merit. LCR 7(b). And it is not inclined to: the evidence (if not Tucker's argument) plainly supports application of the "state created danger" exception to the public duty doctrine. Tucker may pursue his original negligence claim under a state-created danger negligence theory. Defendants' motion for summary judgment on Tucker's negligence claim is DENIED.

### III.   CONCLUSION

Defendants' motion on the *Monell* claim is **DENIED**. Defendants' motion for qualified immunity is **DENIED.** Because police conduct in this situation could be reached under the state-created danger exception, Defendants' motion on Tucker's negligence claim is **DENIED**.

IT IS SO ORDERED.

Dated this 14th day of October, 2016.

Ronald B. Leighton
United States District Judge